SEMINOLE FLAVOR COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1060, 2332. Promulgated April 30, 1945.

*Robert A. Littleton, Esq.*, for the petitioner.
*F. L. Van Haaften, Esq.*, for the respondent.

OPINION.

ARNOLD, *Judge*: The issue herein involves an interpretation, construction, and application of section 45 of the Internal Revenue Code, set forth in the margin.[1] Section 19.45–1 of Regulations 103 defines the terms used in section 45, its scope and purpose, and the application thereof. Section 45 is not a new provision in the code. Much of the language found therein can be traced back through prior acts to section 240 (d) of the Revenue Act of 1921. It first appeared in its present form as section 45 in the Revenue Act of 1928. Despite its long history as an integral part of the revenue statutes, the section has been sparingly applied. However, where section 45 has been at issue, it has been held that it confers broad discretionary power upon the Commissioner to allocate income or deductions "if he determines" that such allocation "is necessary in order to prevent evasion of taxes or clearly to reflect the income * * *." *Briggs-Killian Co.*, 40 B. T. A. 895; *Asiatic Petroleum Co. (Delaware), Ltd.*, 31 B. T. A. 1152; affd. (C. C. A., 2d Cir.), 79 Fed. (2d) 234; certiorari denied, 296 U. S. 645; *National Securities Corporation* v. *Commissioner* (C. C. A., 3d Cir.), 137 Fed. (2d) 600, affirming 46 B. T. A. 562. The congressional committee reports show that Congress in enacting this section had particularly in mind the evasion of taxes by the shifting of profits, the making of fictitious sales, and other methods frequently adopted for the purpose of "milking." See *Asiatic Petroleum, supra*, 31 B. T. A., at pp. 1155–56. If the Commissioner determines that an allocation is necessary, the taxpayer has the burden of proving that the Commissioner's determination was arbitrary and that its situation is not one to which the statute applies. *Essex Broadcasters, Inc.*, 2 T. C. 523, 529; *Glenmore Distilleries Co.*, 47 B. T. A. 213, 224; *G. U. R. Co.* v. *Commissioner* (C. C. A., 7th Cir.), 117 Fed. (2d) 187, affirming 41 B. T. A. 223; *Welworth Realty Co.*, 40 B. T. A. 97, 100. Application of section 45 has been denied where the Commissioner attempted to set up income where none existed, *Tennessee-Arkansas Gravel Co.* v.

---

[1] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

*Commissioner* (C. C. A., 6th Cir.), 112 Fed. (2d) 508, reversing Board of Tax Appeals memorandum opinion; *E. C. Laster*, 43 B. T. A. 159, 176; affirmed on another point, 128 Fed. (2d) 4, or to use the section for the disallowance of a deduction. *General Industries Corporation*, 35 B. T. A. 615.

The basic facts here are that prior to August 16, 1939, petitioner manufactured, advertised, sold, and supervised the bottling of its flavor extracts; thereafter it only manufactured the flavor extracts. After August 15, 1939, advertising, merchandising, and supervisory services were handled under contract by a partnership composed of petitioner's stockholders, whose interests in the partnership were identical with their stock interests in the petitioner. In view of these facts respondent has *determined* under section 45 that it *is necessary* to allocate to petitioner for each taxable year a stated portion of the gross income of the partnership "in order that your income and the income of Seminole Flavor Co., Ltd., may be clearly reflected," and he contends that the existence of the partnership should be ignored for tax purposes. Under the statute and the decided cases petitioner must prove Commissioner's determination was arbitrary in order to prevail.

Petitioner's proof can be summarized under three main contentions. In the first place it is contended that the books and records of the petitioner and the partnership, separately kept and maintained, clearly reflect the income of each. Secondly, it is contended, at least in effect, that petitioner and the partnership were separate and distinct business enterprises, each organized and operated for a definite business purpose and each actively engaged during the taxable years in carrying on a trade or business, so that there was no compelling reason to ignore the existence of the partnership. Thirdly, it is contended that section 45 seeks only to adjust and correct improper bookkeeping entries between separate businesses, that application of the section should be strictly confined to this purpose, and that the Commissioner should not be permitted to use the section to justify his arbitrary consolidation of the net incomes of two separate businesses.

After carefully weighing and scrutinizing the entire record herein, and limiting our conclusion solely to the particular facts and circumstances before us, it is our opinion that petitioner has sustained its burden of proof. Our findings show that petitioner and the partnership kept and maintained separate books of account. The accuracy of the books of account and record is emphasized by the Commissioner's use of the partnership net profits, per its books, as the exact amount of gross income to be allocated for each taxable year to the petitioner. The Commissioner directs our attention to no single entry or account which he contends is improper or inaccurate or which he

now seeks to correct. His contention is that the entire arrangement was devised so that all of the partnership profits would be liverted from the petitioner for the purpose of reducing and evading its income tax liabilities.

The Commissioner supports his determination by pointing out that it was immaterial to Geeslin what form of organization was adopted, so long as he had control of it, and that Little and the other directors only became interested in Geeslin's plan in April 1938, after they realized that 1937 taxes amounted to $41,487.95 [2] and first quarter earnings indicated that 1938 would be a higher tax year than 1937. Furthermore he points out that in August 1939, when the directors decided to adopt Geeslin's plan, they knew 1938 taxes amounted to $38,374.66 [2] and that they rejected a subsidiary corporation and organized a limited partnership, with no reasons assigned therefor. The Commissioner also points out that his exhibits R, S, and T, which set forth the tax computations mentioned in our findings, show the tax savings which resulted from the creation of the partnership and channeling of income to it which otherwise would have been taxable to the petitioner. And, finally, the Commissioner supports his determination by charging that the contract fixing the commissions between the petitioner and the partnership was not an arm's length transaction such as petitioner would have entered into with strangers, but was subject to and was changed at will by the parties.

The difficulty we have with the first points made by the Commissioner is that the facts preponderate against his contentions. Geeslin did testify that the type of organization adopted to carry out his plan of operation was immaterial to him, but we don't see how this testimony helps the Commissioner. Geeslin also testified that a string of company owned bottling plants was considered and rejected. Why a subsidiary corporation or a string of company owned bottling plants should be rejected in favor of a limited partnership is beside the point. We must look to the things that were done and not to what might have been done; and it is here established that a limited partnership was decided upon, was organized, and was thereafter operated. Whether the stockholders were principally influenced in what they did by a consideration of future tax liabilities would seem to depend in a large measure upon their ability to foresee continually increasing earnings.

Unless the partnership was more successful in eliminating the complaints of bottlers than the petitioner had been, the tax benefits, if any, were purely speculative. Petitioner was operating in a highly competitive industry. Its earnings record was not impressive prior

---

[2] Federal taxes paid upon original return. Discrepancies between these amounts and the amounts shown in our findings represent additional Federal tax payments.

to 1936. Earnings for 1937 and 1938 were very satisfactory, but increasing merchandizing difficulties warned of disaster ahead unless an early solution was found. We are convinced that prior efforts and endeavors had failed to remedy petitioner's problems, and Geeslin's plan was adopted as holding out a reasonable chance of success where other plans had failed. The record shows that a partnership was adopted as the vehicle to carry out the plan because it afforded the most feasible and flexible arrangement for promoting the sale and distribution of petitioner's products. The new plan provided for a new approach to petitioner's merchandizing problems and for services not previously rendered by petitioner. We do not mean to say that taxes were not considered in the new set-up. Undoubtedly they were, for taxes occupy a prominent place in the operation of any business. But recognition of this inevitable fact is not the equivalent of saying, or holding, that this partnership was primarily and predominantly a scheme or device for evading or avoiding income taxes.

Exhibits R, S, and T were compiled by respondent from figures in the record and are relied upon by him to show his determination was necessary in order to prevent the evasion of taxes. As to partnership earnings, these exhibits shows individual tax liability for 1940 and 1941 (a) if all partnership net profits were taxed to the partners; (b) if only that portion of partnership net profits actually distributed were taxed to the partners; and (c) if none of the partnership net profits were taxed to the partners. An analysis of these exhibits in connection with the returns shows that the Government would receive additional revenue only if the corporation distributed such profits to the stockholders. When the Commissioner stripped the partnership of its net earnings by allocating such earnings to petitioner, no partnership income was left to be taxed to the partners. Eliminating the partnership earnings from the individual returns, as in (c), the aggregate tax of the individuals from all sources would be $100,000 less in 1940 and $161,000 less in 1941 than under (a). Including the partnership earnings in petitioner's income, its taxes for both years fell short of making good this loss of revenue by over $53,000. Certainly, this is not tax evasion. The Commissioner, however, argues that not only must the income of the two trades or businesses be consolidated, but the partnership profits he included in petitioner's income must also be considered as corporate distributions to the stockholders, and taxed to them, notwithstanding no corporate action has been taken with reference thereto. Thus it is plain that it is only when allocation of the partnership profits to petitioner is followed by distribution and taxation of the partnership profits to the stockholders that it can be said that there is an understatement of taxes.

But we are by no means convinced that section 45 goes so far. The

statute authorizes the Commissioner "to distribute, apportion, or allocate * * * between or among such organizations, trades or businesses," but it does not specifically authorize him "to combine." Certainly, the Commissioner's own regulations, section 19.45-1, Regulations 103, negative the use of section 45 for the purpose of combining or consolidating the separate net income of two or more organizations, trades, or businesses, as it states:

* * * It [sec. 45] is not intended (except in the case of computation of consolidated net income under a consolidated return) to effect in any case such a distribution, apportionment, or allocation of gross income, deductions, or any item of either, as would produce a result equivalent to a computation of consolidated net income under section 141.

It is apparent that the Commissioner's action here has produced "a result equivalent to a computation of consolidated income." And even assuming that the statute does authorize the Commissioner to combine income under his power to distribute, apportion *or* allocate, it does not follow that section 45 also authorizes him to distribute as dividends to stockholders, who are separate and distinct entities from the corporation, the amount so allocated.[3] Nor does combining the income of the two businesses in petitioner, with its resulting increase in accumulating surplus without distribution thereof by dividends, necessarily bring section 102 into play. The evidence in this record indicates that petitioner may have a good defense against the application of that section, but, since section 102 is not before us, it is unnecessary to discuss this possibility.

Commissioner's final point is that the contract between petitioner and the partnership was not an arm's length transaction, but was a means or method of shifting profits for the purpose of evading tax. This contention, in our opinion, goes to the heart of the present controversy. There can be no doubt that the books and records herein clearly reflect the income of petitioner and the partnership. Nor can there be doubt as to the organization and existence of the partnership as a going concern. This brings us to the question of whether the contract between the partners was fair and reasonable. The heart of the contract is the compensation provision, and if the compensation agreed upon by the parties was fair and was fairly arrived at, it should be recognized and upheld for tax purposes. The compensation fixed by the contract was 50 percent of the invoice price, less prepaid freight charges. The Commissioner says that the testimony fails to disclose the exact factors which enabled the parties to agree on 50 percent instead of some other percentage, and he complains of the absence of evidence showing a value for the Double-Cola formula, the

---

[3] In discussing corporate distributions in *Putnam Estate* v. *Commissioner*, — U. S. —— (Mar. 28, 1945), the Supreme Court pointed out that corporate earnings are not available to stockholders "before the corporation makes those profits available." Similarly here, the Commissioner cannot substitute his action for the requisite corporate action.

value of buildings, or the return on invested capital, all of which, he says, are essential elements to be considered in arriving at a fair profit for the petitioner.

We doubt the need for such evidence even if it were available, and much of it would be unavailable. In our opinion the commission fixed in the contract should be examined and judged as to fairness by the services, duties and obligations imposed thereby on the partnership. Contrary to the Commissioner's argument, the consideration was not limited to the payment of $3,530.22 for office equipment and furniture. The partnership obligated itself to take over, manage, handle, and control all of petitioner's business pertaining to the advertisement, sale, and distribution of its products and in connection therewith to bear and pay all expenses and costs incident to rendering the following services: (1) Maintain and develop markets for the sale and distribution of petitioner's products; (2) supervise and service all bottling accounts, and do all things necessary to increase the sale and consumption of petitioner's products by the bottlers; (3) enlarge and extend the territory and market of bottlers, secure new bottling accounts, and render financial aid and assistance where new bottling plants were established; (4) design, execute, and manage advertising campaigns for the sale and consumption of petitioner's products; (5) watch the credit rating and standing of bottlers, bill and collect from them for merchandise sold, keep an accurate record of statements mailed and collections made, and make settlements periodically with the petitioner. That the assumption of these obligations by the partnership was as much a part of the consideration as the cash payment for the office furniture and equipment would seem so obvious that no citation of authority is necessary.

Furthermore, there is testimony and documentary evidence in the record to the effect that prior to entering into this contract petitioner was expending yearly an average of approximately 48 percent of its manufacturing profits for advertising, selling, and promoting services. Since the plan and contract contemplated the foregoing and other services to the bottlers, the commission fixed does not appear to be out of line with petitioner's own experience. On this basis the transaction would seem to be fair and entitled to classification as an arm's length transaction. Whether any such business agreement would have been entered into by petitioner with total strangers is wholly problematical. Petitioner was not seeking new blood or new capital in its business. It was seeking a solution of its merchandizing difficulties. It is entirely consistent, therefore, that the stockholders of petitioner in creating a new business organization to solve these difficulties would place the control thereof in the people most familiar and intimate with the problem. To say that the predominant purpose of a business

enterprise so conceived and created was tax evasion places an undue emphasis upon incidental results that is entirely foreign to the stated purpose of Congress in enacting section 45.

Although the Commissioner's determination and argument are bottomed upon the authority conferred upon him by section 45, he also contends that the existence of the partnership should be ignored. While this contention is not set up in the alternative, we deem the matter of sufficient moment to merit discussion. As hereinabove indicated, petitioner's stockholders created a partnership and its existence in fact can not be denied. The question is, should its existence be ignored for tax purposes? The Commissioner's determination recognizes the existence of the partnership, its conduct of a business, and the receipt of income to the extent of its deductible expenses. But, when he comes to the question of taxing petitioner's profits, the Commissioner wants to ignore the partnership's existence. The authorities, we believe, do not support the Commissioner's position.

In *Nichols & Co.* v. *Secretary of Agriculture* (C. C. A., 1st Cir.), 131 Fed. (2d) 651, it was held that a partnership composed of members who were stockholders in a corporation of the same name and whose interests in the partnership were identical with their stock interest in the corporation could not be disregarded by the Secretary of Agriculture in administering the Commodity Exchange Act.

In *Ross* v. *Commissioner* (C. C. A., 5th Cir.), 129 Fed. (2d) 310, reversing 43 B. T. A. 1155, the Circuit Court pointed out that in tax matters it is only under exceptional circumstances that the separateness of a corporation from its stockholders can be disregarded. It was there held that where a corporation's business consisted of selling horses and mules at auction for a commission and the principal stockholder and other corporate officers carried on a separate partnership business of buying horses and mules at auction, the aggregation of the two separate businesses for income tax purposes was not justified, notwithstanding the fact that the partners were working at the same time for the corporation and for themselves and as between themselves divided corporate and partnership earnings on a similar basis. The Commissioner made no determination in the *Ross* case that section 45 applied; he simply held the partnership income to be part of the corporate income. Upon remand to the Tax Court the Commissioner contended that section 45 applied, but this contention was rejected in a memorandum opinion rendered September 18, 1943.

The question which occurs more frequently is whether a corporate entity should be ignored for tax purposes. On principle the rule would seem to be the same, whether a partnership or a corporation is involved. *Asiatic Petroleum Co. (Delaware) Ltd., supra; National Securities Corporation, supra; G. U. R. Co., supra; Welworth Realty Co., supra;*

*Pennsylvania Indemnity Co.*, 30 B. T. A. 413; affirmed *per curiam*, 77 Fed. (2d) 92, and *Majestic Securities Corporation*, 42 B. T. A. 698; affd., 120 Fed. (2d) 12, are all cases in which the separate corporate entity was ignored for tax purposes. None of them is comparable to or controls the present situation. In our opinion we should recognize the separate existence of the partnership just as the separate existence of individual, partnership, estate, and corporate enterprises was recognized in *Briggs-Killian Co., supra; Nichols & Co.* v. *Secretary of Agriculture, supra; Ross* v. *Commissioner, supra; Essex Broadcasters, Inc., supra; Robert Gage Coal Co.*, 2 T. C. 488; *Koppers Co.*, 2 T. C. 152; *Burnet* v. *Clark*, 287 U. S. 410; *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415; *Interstate Transit Lines*, 319 U. S. 590; *Moline Properties Inc.*, 319 U. S. 436.

Actually, the principal force behind all of the Commissioner's argument is that the petitioner could as well have done all the things that the partnership did and reaped all of the earnings of the related enterprises. Since petitioner could have had the earnings, the Commissioner would make it so by exercising the authority conferred by section 45. The same type of argument was made in the *Koppers* case, *supra*, which rejected the argument in language equally apt to the present contention, due allowance being made for factual differences, p. 158:

> The answer, however, to this argument is that petitioner did not do this. It was free to and did use its funds for its own purposes. It was under no obligation to so arrange its affairs and those of its subsidiary as to result in a maximum tax burden. On the other hand it had a clear right by such a real transaction to reduce that burden. *Helvering* v. *Gregory*, 293 U. S. 465; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; *Commissioner* v. *Gilmore Estate*, 130 Fed. (2d) 791; *Coca-Cola Co.* v. *United States*, 47 Fed. Supp. 109; *Commissioner* v. *Kolb*, 100 Fed. (2d) 920.

Here the stockholders used their separate funds to organize a new business enterprise which entered into a contract with the corporation to perform certain services for a consideration that we consider fair in the light of the previous experience of the corporation. Since there was no obligation on the stockholders to arrange their own and the petitioner's affairs so as to result in a maximum tax burden, cf. *Stanley D. Beard*, 4 T. C. 756, we should give effect to the realities of the situation and recognize the existence of the partnership, and we so hold. Cf. *J. R. Wood & Sons, Inc.* v. *United States*, 46 Fed. Supp. 877.

Since other adjustments were involved in determining the deficiencies,

*Decision will be entered under Rule 50.*