**R. O. TILLOTSON and Margaret Tillotson, Plaintiffs,**

v.

**James L. McCRORY, Defendant,**

and

**United States of America, Intervenor.**

**Mary V. TILLOTSON, Plaintiff,**

v.

**James L. McCRORY, Defendant,**

and

**United States of America, Intervenor.**

**TILLOTSON CONSTRUCTION COMPANY, a corporation, Plaintiff,**

v.

**James L. McCRORY, Defendant,**

and

**United States of America, Intervenor.**

**Civil 0522–0524.**

United States District Court
D. Nebraska.

March 17, 1962.

Harry Welch, and James McGreevy, Omaha, Neb., for plaintiffs in all cases.

R. Michael Duncan, Dept. of Justice, Washington, D. C., for defendant and intervenor in all cases.

ROBINSON, Chief Judge.

These cases were consolidated for trial and were tried to the Court.

Briefly, the causes of action are as follows: The Tillotson Construction Company seeks a refund of $22,654.41, plus interest, representing income taxes for the calendar year 1953, 1954, and 1955, allegedly erroneously assessed and collected. The United States intervened in this action seeking to collect an unpaid assessment against the company for 1955 income taxes in the amount of $96,596.20, plus interest.

The estate of R. O. Tillotson and his widow, Margaret Tillotson, seek the refund of $180.20, plus interest, representing 1955 income tax allegedly overpaid. The United States intervened seeking to collect an unpaid assessment against them for 1955 income taxes in the amount of $47,031.85, plus interest.

Mary V. Tillotson seeks refund of $180.19, plus interest, representing the 1955 income tax allegedly overpaid. The United States intervened seeking to collect an unpaid assessment against her for 1955 income tax in the amount of $49,301.31.

Three issues were presented for determination:

1. Whether the Commissioner abused his discretion in allocating certain items of income and expense reported by Tillotson Contracting Company, a partnership, to the 1954 and 1955 income of the Tillotson Construction Company, a corporation under the provisions of Section 482 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 482.

2. Whether the Commissioner was correct in his determination that rent paid for construction equipment by the corporation to the partnership for the years 1952–1954, inclusive, was excessive and therefore not allowable as a business expense deduction to the corporation.

3. Whether the Commissioner was correct in disallowing some of the partnership's claimed depreciation deduction based upon a determination of longer useful lives of certain of the construction equipment owned by the partnership.

The Tillotson Construction Company, hereinafter referred to as the corporation, was incorporated under the laws of Nebraska in 1938. As of May 1, 1952, the stockholders of the corporation were Rose Tillotson—37 shares; Reginald O. Tillotson—8 shares; and Mary V. Tillotson—5 shares. Rose Tillotson, mother of Reginald and Mary, passed away intestate in 1953 and Reginald and Mary became the owners of her shares of stock.

Tillotson Contracting Company, hereinafter referred to as the partnership, was formed in May of 1952 for the purpose of carrying on general building, construction and contracting business. The profits of the partnership were to be divided 50% to Reginald and 50% to Mary Tillotson.

The corporation filed income tax returns on a calender year completed-contract basis for the years 1952–1955 inclusive. Its returns for the years 1952 and 1953 showed net operating losses. The 1954 return showed a deduction for the net operating loss carryover remaining after carryback to the year 1951 and claim for refund was filed to recover the 1951 taxes paid, based upon the carryback. Upon audit, the Commissioner allowed an overassessment for 1951 based on a carryback of the 1952 operating loss, and asserted deficiencies for 1953 and 1954. These deficiencies were paid and claims for refund were filed with the District Director.

The corporation return for the calendar year 1955 and the partnership return for its fiscal years ending April 30, 1955, and 1956, the joint return of R. O. and Margaret Tillotson and the individual 1955 return of Mary V. Tillotson were audited and the revenue agent carried forward the allocations of profits on contracts completed by the partnership to the corporation's 1955 income and carried forward the Commissioner's rental deduction adjustment. The corporation filed a claim for refund for allegedly overpaid 1955 taxes, based on the

theory that certain costs should have been accrued as deductible expenses on the 1955 return, thereby reducing the income as reported on the alleged tax liability of the corporation. On the same date, Reginald and Margaret Tillotson and Mary V. Tillotson filed separate claims for refund for allegedly overpaid 1955 taxes based on the theory that certain partnership costs should have been included as deductible expenses on its partnership return for its fiscal year ending April 30, 1955, thereby reducing their 1955 distributable shares. After the lapse of six months without formal disallowance, the corporation brought suit on its disallowed claims for the years 1953 and 1954 and its claim for the year 1955, and the individual taxpayers filed their suits on their claims for the year 1955.

The Commissioner thereupon issued statutory notices of deficiency to the corporation and to Reginald and Margaret Tillotson and Mary V. Tillotson for the year 1955, for the amounts involved in the three actions herein. Notice and demand were served, taxpayers defaulted, and the United States proceeded to intervene in these actions under the provisions of § 7422(e), 26 U.S.C.A. 1958 ed., § 7422, to recover the unpaid assessments.

■ Section 482 of the Internal Revenue Code of 1954, provides as follows:

"Allocation of income and deductions among taxpayers.

"In any case of two or more organizations, trades, or business (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly

to reflect the income of any of such organizations, trades, or businesses." (26 U.S.C. 1958 ed., § 482.)

This section of the statute authorizes the Commissioner to distribute or allocate gross income and deductions between businesses owned or controlled directly or indirectly by the same interests if he determines that such distribution or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of these businesses.

The evidence presented here shows that the partnership was organized in May of 1952 as an equal partnership of Reginald and Mary Tillotson and that the initial business of the partnership consisted of renting construction equipment formerly owned by the corporation to the corporation for use of the corporation on construction jobs. The corporation was organized in 1938 and it engaged in the construction of grain elevators. It is undisputed that the Tillotson name became well known in this business. In 1952, Reginald and Mary were the managing officers and stockholders of the corporation and while their mother was the majority stockholder, she was inactive in the business.

Commencing in 1954 the partnership began taking grain elevator construction contracts in its own name as well as continuing to rent construction equipment to the corporation for jobs being performed by the corporation. During the calendar year 1954 the partnership completed one contract and the Commissioner allocated the gross profits on this contract to the corporation. During the calendar year 1955 the partnership completed eight contracts and the Commissioner allocated the gross profits from those contracts to the corporation's 1955 income and made a corresponding allocation of administrative expense to the corporation and partnership income was adjusted accordingly. The issue for the Court's determination is whether the Commissioner abused the discretion granted him under § 482 in making this allocation.

The Government contends that the taxpayers cannot properly contest the "common control requirement" of § 482, alleging that the two entities, the corporation and the partnership, were being operated by the same people, and as of the date the partnership started to undertake construction contracts, they were the sole beneficial owners of the corporation's stock.

Treasury Regulation 118 (1939 Code), § 39.45–1(a) (3), defines the term "controlled" in § 482 to include:

"* * * any kind of control, direct or indirect, whether legally enforceable, and however exercisable or exercised. It is the reality of the control which is decisive, not its form or the mode of its exercise. * * *"

The important criteria discussed by the Courts in "split-up" cases has been whether the split-up represented a logical, natural or functional division of the business, and whether the split-up was motivated by business reasons or tax avoidance. See and compare: Idaho Livestock Auction v. United States, D.C., 187 F.Supp. 875; Twin Oaks v. Commissioner, 9th Cir., 183 F.2d 385, 24 A.L.R. 2d 466; Raymond Pearson Motor Co. v. Commissioner, 5th Cir., 246 F.2d 509; Seminole Flavor Co. v. Commissioner, 4 T.C. 1215, 1219–1221; Buffalo Meter Co. v. Commissioner, 10 T.C. 83, 89; Palm Beach Aero Corp. v. Commissioner, 17 T.C. 1169, 1174.

From the evidence presented in these cases the Court finds that the corporation and the partnership were, during the period in question, separate and distinct entities with legitimate business purposes. At all times subsequent to the formation of the partnership, books and records were kept by the joint bookkeeping department of the two organizations reflecting the financial position of each and the income derived from these respective businesses was readily ascertainable and attributable to the business which earned it. The books and records of the organizations were inspected and audited by an independent auditing firm

and separate bank accounts were kept by the two organizations. There were no attempts to distort the true gross income of either organization.

The businesses here in question were separate and distinct entities with legitimate business purposes, and even though controlled by the same interests, they transacted business between themselves at arms length. From the record here I have concluded that the Commissioner erred in allocating funds of the partnership to the corporation.

As to the second issue presented by these cases, the Commissioner, as part of the deficiencies in issue here, disallowed the deduction by the corporation of part of the equipment rentals charged by the partnership.

Section 23(a) (1) (A) of the Internal Revenue Code of 1939, and Section 162(a) (3) of the Internal Revenue Code of 1954, provide as follows:

Internal Revenue Code of 1939:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) [As amended by § 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798] Expenses.

"(1) *Trade or business expenses.*

"(A) *In general.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *" (26 U.S.C. 1952 ed., § 23.)

Internal Revenue Code of 1954:

"§ 162. Trade or business expenses.

"(a) *In general.* There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year

in carrying on any trade or business, including—

\* \* \* \* \* \*

"(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." (26 U.S.C. 1958 ed., § 162).

These sections of the code provide for the deduction of rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. The issue here is whether the payments in question represented actual rental payments required to be made as a condition to the continued use or possession of the property. If they were not wholly rental payments then the excess is not deductible.

The Court of Appeals for the Eighth Circuit has held that in cases of close relationship between lessor and lessee, close scrutiny of the situation is appropriate in determining whether some part of the amounts designated as rentals were in fact disguised distributions of profits or dividends, Potter Electric Signal & Manufacturing v. Commissioner, 8 Cir., 286 F.2d 200; and arrives at the determination by inquiry into what constitutes a reasonable rental for the property in issue. The taxpayer who claims the deduction has the burden of proof to establish what amounts constitute reasonable rentals and must overcome the presumption of correctness of the Commissioner's determination.

The record here shows that the taxpayers relied upon the rates set out in the Associated Equipment Distributors rental compilations. Four expert witnesses from the Omaha area testified that the rentals charged were fair and reasonable and the Court is not convinced that the rates paid were in excess of what the lessee would have been re-

quired to pay had they dealt at arms length with a stranger. The Court cannot disregard the unimpeached and competent testimony of the taxpayers here, which stands uncontradicted. E. Albrecht & Son v. Landy, 8 Cir., 114 F.2d 202.

The final issue presented is raised by the Commissioner's reduction of the partnership's depreciation deduction. The partnership, which owned all of the construction equipment used in the business after the acquisition from the corporation in May, 1952, deducted depreciation on the equipment. Depreciation was computed on a composite 30% rate (or 3⅓ year useful life) both on the new equipment and the old equipment purchased from the corporation. The Commissioner determined that the equipment subsequently purchased by the partnership had a longer useful life. The determination had the effect of decreasing the allowable depreciation deduction to the partnership, and it is this determination of a longer useful life for the subsequently purchased equipment that the taxpayers here dispute.

Section 167(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 167 (a) allows a reasonable allowance for the exhaustion, wear and tear of property used in business or trade. Section 1.167 (a)–1(a) of Treasury Regulations on Income Tax, 1954, provides that *the useful life of property shall be determined by reference to the taxpayer's experience with similar property.* A determination as to useful life is therefore a factual conclusion.

Expert testimony by the taxpayers was to the effect that the depreciation allowance used by the partnership in connection with the used equipment and the smaller equipment was correct and comparable with the rate used by other companies in the Omaha area. I have concluded that while a life of five years might be appropriate for new equipment purchased by the partnership, such a conclusion cannot be reached as to the other equipment and that the composite five-year depreciation period de-

termined by the Commissioner is unrealistic and must be overruled.

In summary, the Commissioner's allocation of construction profits from the partnership to the corporation is overruled. The Commissioner's disallowance of rental deduction by the corporation on part of the equipment rentals charged by the partnership are overruled. The Commissioner's adjustments to the partnership's depreciation deduction on the construction equipment are overruled.

Counsel for the plaintiffs will prepare Findings of Fact, Conclusions of Law and a Judgment, incorporating therein the stipulation of the parties, submit them to counsel for the Government for approval as to form only, and file them with the Court within 45 days from the date hereof.