**T. R. VARDEMAN, Sr., and wife, Ruby Vardeman; T. Richard Vardeman and wife, Marvis Vardeman, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2944.**

United States District Court
E. D. Texas,
Tyler Division.

Aug. 24, 1962.

Allen E. Pye, Tyler, Tex., for plaintiffs.

Louis F. Oberdorfer, Asst. Atty. Gen., Department of Justice, Washington, D. C., Myron C. Baum, Stanley F. Krysa, Department of Justice, Fort Worth, Tex., William Wayne Justice, U. S. Atty., Tyler, Tex., for defendant.

SHEEHY, Chief Judge.

In this action Plaintiffs T. R. Vardeman, Sr. and wife, Ruby Vardeman, and T. Richard Vardeman and wife, Marvis Vardeman, all of whom reside in Nacogdoches County, Texas, are seeking to recover individual income taxes and statutory interest thereon alleged to have been erroneously assessed against and collected from them for the years 1958 and 1959. After payment thereof timely claims for refund were filed by the Plaintiffs, respectively. The Commissioner of Internal Revenue, hereinafter referred to as the Commissioner, took no formal action on said claims, and this action was instituted more than six months after the filing of the claims for refund.

On or about January 1, 1951, T. R. Vardeman, Sr. and his son, T. Richard Vardeman, hereinafter referred to as the Vardemans, as equal partners, formed a partnership known as T. R. Vardeman and Son, hereinafter referred to as the Partnership. The Partnership has been in continuous existence since its formation. Its business was that of a highway or road construction contractor, with its principal activity being that of construction of state highways under contracts with the Texas Highway Department obtained on the basis of competitive bidding. The Texas Highway Department establishes for each contractor permitted to bid on highway contracts a "bidding capacity," and under its rules and regulations a contractor cannot have at any time contracts with said Highway Department that exceed in the aggregate the bidding capacity of the contractor. The "bidding capacity" of a contractor under the rules of the Texas Highway Department is an amount equal to ten times the "working capital" of the contractor as shown by the financial statement or balance sheet filed by the contractor with the Texas Highway Department. Generally speaking, "working capital" is the excess of current assets over current liabilities. Current assets include cash on hand and accounts receivable but does not include such property as highway construction equipment that might be owned and used by a contractor, however any amount owed by the contractor on the construction equipment is considered a liability in determining "working capital."

From 1951 to January 28, 1957, all of the construction equipment used by the Partnership in its business operations was either owned by the Partnership or rented by the Partnership from others. The instances of renting equipment from others were infrequent. Some time prior to January 1957 the Vardemans discussed among themselves and with their Accountant-Auditor the possibilities of forming a corporation to engage in the business of owning and renting highway construction equipment. If the corporation were formed, it was contemplated by the Vardemans that the Partnership would transfer its heavy construction equipment to the corporation, and thereafter the Partnership would lease or rent said equipment from the corporation as it was needed by the Partnership. The Vardemans were discussing and considering the forming of such a corporation because they felt that by forming such a corporation and transferring to it the heavy construction equipment, which the Partnership could rent or lease from the corporation, the bidding capacity of the Partnership would be increased and thereby permit the Partnership to bid on and obtain from the Texas Highway Department highway construction contracts of a greater aggregate value. At no time during the discussions of the possibility of forming such a corporation did the Vardemans either mention or consider the income tax consequences of the forming of such a corporation.

Believing that the forming of a corporation and the transferring to such corporation by the Partnership of the construction equipment then owned by the Partnership, with the Partnership renting or leasing from the corporation the construction equipment as it was needed by the Partnership, would increase the Partnership's bidding capacity, T. R. Vardeman, Sr., T. Richard Vardeman and Ruby Vardeman on January 28, 1957,

organized under the laws of Texas a corporation known as Vardeman Equipment Company, Inc., hereinafter referred to as the Corporation. The Corporation was capitalized for $50,000.00. The capital stock of said Corporation has been owned at all times pertinent hereto as follows: T. R. Vardeman, Sr.—24 shares; T. Richard Vardeman—24 shares; and Ruby Vardeman—2 shares. The purpose of the Corporation, as reflected in its Charter, is to own earth and dirt moving equipment suitable and necessary for use in the construction and maintenance of highways, roads, levees and dams for the purpose of renting and leasing such equipment to other persons for use in the construction and maintenance of highways, roads, levees and dams.

By Bill of Sale dated February 11, 1957, the Partnership transferred to the Corporation all of the construction equipment then owned by it except its pickup trucks and one or two heavier trucks. At the time of said transfer of ownership no money was owed by the Partnership on the equipment transferred. The consideration paid by the Corporation for said equipment was the original cost of said equipment to the Partnership, less the depreciation taken on said equipment as shown by the books of the Partnership, which was the sum of $105,405.14. The consideration was paid by the Corporation issuing to the Vardemans $45,000.00 worth of the capital stock of the Corporation and setting up on the books of the Partnership the sum of $60,405.14 as an account receivable of the Partnership from the Corporation. Said sum of $60,-405.14 was paid by the Corporation to the Partnership by the Corporation crediting the account of the Partnership for rent due the Corporation for the rental of equipment with said amount of $60,405.14.

At or about the time the Corporation was formed the Vardemans got together and established the rental or lease price that the Corporation was to charge for each piece of construction equipment it was to lease or rent to the Partnership or anyone else desiring to rent same. The rental or lease prices established were based on rental or lease prices of highway construction equipment shown in a manual issued by the Associated Equipment Dealers and on the experience the Vardemans had had in the renting of highway construction equipment. At all times subsequent to the transfer of the equipment to the Corporation, including the tax years in question, the Partnership rented or leased from the Corporation such equipment as was owned by the Corporation as needed by the Partnership in its highway construction work with the Corporation charging and the Partnership paying the established rate for the rental or leasing of said equipment as shown by invoices presented to the Partnership by the Corporation monthly.

The Partnership, from the date of its creation, owned and maintained an office and storage yard in the City of Nacogdoches, Texas. Before the forming of the Corporation the construction equipment owned by the Partnership, when not in use or stored on a job site, was stored on the Partnership's storage yard. After the Corporation was formed and the construction equipment transferred to it, the construction equipment owned by the Corporation continued to be stored on the Partnership's storage yard when such equipment was not on the job site, with the Partnership making no charge to the Corporation for such storage. The Corporation's books were kept separately from those of the Partnership and were kept by T. R. Vardeman, Sr., President of the Corporation, with the assistance of a bookkeeper employed and paid by the Partnership. The books of the Corporation and of the Partnership were kept properly and truly reflected the business transactions of each. The Corporation and the Partnership maintained separate bank accounts. The books and records of the Corporation were kept in the offices occupied by the Partnership as the Corporation did not maintain offices sepa-

rately from the Partnership. During its existence, but on no occasion during either of the tax years involved, the Corporation has rented construction equipment to persons other than the Partnership, and when such was done, the same rentals were charged as were charged the Partnership for like equipment.

From the time of its incorporation the Corporation timely filed income tax returns annually on the basis of its fiscal year ending September 30 and paid the income taxes shown to be owing because of the profits it made as a result of its business operation. Its income was the rent it received for the rental of its construction equipment. For the fiscal year that ended September 30, 1957, the tax return covered the period from January 28, 1957, the date the Corporation was incorporated, to September 30, 1957, and showed a gross income of $48,840.79, upon which the Corporation, after deducting its expenses, including salaries paid the Vardemans as officers of the Corporation and the depreciation taken on the construction equipment, paid income taxes in the amount of $2,673.56. The income tax return for the fiscal year ending September 30, 1958, showed a gross income to the Corporation of $79,810.44, upon which, after deducting operating expenses and taking depreciation on the equipment, the Corporation paid income taxes in the amount of $2,888.18. The tax return for the fiscal year that ended September 30, 1959, showed the gross income to the Corporation to be the sum of $104,285.00, upon which, after deducting operating expenses and taking depreciation on the equipment, the Corporation paid income taxes in the amount of $5,941.13.

During the tax years in question the Corporation purchased some additional equipment. Most of this equipment was paid for in cash by the Corporation with its own money that it had received for the rental of its equipment to the Partnership. However, on one occasion the Partnership loaned the Corporation $45,000.-00 with which to pay for some heavy construction equipment purchased by the Corporation. This $45,000.00 was repaid to the Partnership by the Corporation giving credit against the amount owed it by the Partnership for the renting or leasing of equipment.

Upon the transfer by the Partnership of the equipment to the Corporation, the bidding capacity of the Partnership was increased in an amount equal to ten times the sum of $60,405.14, the amount of the account receivable owed by the Corporation to the Partnership as a part of the purchase price for said equipment. From the time of the formation of the Corporation to the time of the trial of this action the bidding capacity of the Partnership has almost doubled that what it was immediately prior to the forming of the Corporation. This increase in the bidding capacity has permitted the Partnership to bid on more and larger contracts with the Texas Highway Department.

T. R. Vardeman, Sr. and wife, Ruby Vardeman, and T. Richard Vardeman and wife, Marvis Vardeman, respectively, timely filed their income tax returns for the years in question and paid the income taxes shown thereon to be due. The Partnership duly and timely filed an information tax return for each of the years in question. In each of the information returns filed by the Partnership, the Partnership showed as a deductible expense the amounts paid during that year to the Corporation for rental of construction equipment from the Corporation. In the tax returns filed by the Corporation, the Corporation showed as income to it the amounts paid it by the Partnership for rental of equipment.

Some time subsequent to the date the Plaintiffs, respectively, filed their income tax returns for the year 1959 and prior to March 1961, the Internal Revenue Service audited and made an investigation of the individual income tax returns of the Plaintiffs, respectively, for the years 1958 and 1959, the information income tax returns filed by the Partnership for those years and the income tax returns filed by the Corporation for those years. Following this audit and investigation, the Commissioner, purporting to

act under the authority granted him in Section 482 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 482), determined that the corporate entity of the Corporation should be ignored and thereupon allocated all of the gross income and expenses of the Corporation to the Partnership. As a result of this determination and action by the Commissioner, additional income taxes in the amount of $552.16 were assessed against T. R. Vardeman, Sr. and wife, Ruby Vardeman for the year 1958, and additional income taxes in the amount of $6,713.96 were assessed against T. R. Vardeman, Sr. and wife, Ruby Vardeman, for the year 1959. The amounts of these additional taxes, with interest in the aggregate amount of $385.17, were paid by the said T. R. Vardeman, Sr. and wife, Ruby Vardeman, on or about March 8, 1961. As a result of said determination and action by the Commissioner additional income taxes in the amount of $603.52 were assessed against T. Richard Vardeman and wife, Marvis Vardeman, for the year 1958, and additional income taxes in the amount of $6,934.08 were assessed against the said T. Richard Vardeman and wife, Marvis Vardeman for the year 1959. These additional taxes, with interest in the aggregate amount of $401.40, were paid by T. Richard Vardeman and wife, Marvis Vardeman, on or about March 8, 1961. It is these additional taxes assessed against and paid by them that the Plaintiffs seek to recover in this action.

When the income tax returns of the Vardemans and of the Corporation for 1957 and 1958 are considered together, the income taxes paid by the Vardemans and the Corporation for those years exceeded by the sum of $4,406.06, the amount of income taxes the Vardemans would have paid had the Corporation not been in existence. When the income to the Partnership and the Corporation and the tax liability of the Corporation and the Vardemans are considered for the years 1957, 1958 and 1959, the existence of the Corporation effected an income tax saving to the Vardemans in the amount of $2,844.56.

Under the facts in this case the questions presented for decision are:

(1) Whether the Commissioner had the right to allocate all of the income and expenses of the Corporation for the years in question to the Partnership, and

(2) If it should be determined that the Commissioner was not authorized to allocate all of the income and expenses of the Corporation to the Partnership, whether the Commissioner was authorized under Section 162(a) (3) of the Internal Revenue Code of 1954 (26 U.S.C.A. § 162(a) (3)) to disallow as a deductible expense to the Partnership the amounts the Partnership paid to the Corporation for equipment rental during the years in question.

Section 482 of the Internal Revenue Code of 1954 provides:

"In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses."

Section 45 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 45 contained similar provisions.

As above indicated, the reason the Vardemans formed the Corporation to own and rent to others, including the Partnership, road construction equipment was not for the purpose of avoiding income taxes or obtaining an income tax advantage but was for the purpose of increasing the bidding capacity of the Partnership. The construction equipment so long as it was owned by the Partnership could not constitute a part

of the working capital of the Partnership, but, on the other hand, any money that might be owed by the Partnership for equipment would be classed as a liability of the Partnership in determining its working capital. At all times subsequent to its formation the Corporation was operated for business purposes, namely, the owning and renting to others of road construction equipment. The Corporation was not a sham but, on the other hand, was formed for a substantial business purpose and since its formation has continuously carried on the business it was created to conduct, and I so find and conclude.

■ It is now well established that a corporation will remain as a separate tax entity for income tax purposes so long as the purpose of its incorporation is the equivalent of business activity or is followed by the carrying on of a business by the corporation. Moline Properties, Inc. v. Commissioner of Internal Revenue, 319 U.S. 436, 439, 63 S.Ct. 1132, 87 L.Ed. 1499; Nelson v. Commissioner of Internal Revenue (5 Cir.) 281 F.2d 1, 6; and Jackson v. Commissioner of Internal Revenue (2 Cir.) 233 F.2d 289, 290. This rule obtains even though the owner of the corporation retains direction of its affairs down to the minutest detail, provides all of its assets and takes all of its profits. National Carbide Corporation v. Commissioner of Internal Revenue, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779. Thus, under the findings hereinabove made as to the purpose for which the Corporation was formed and the business activity of the Corporation since its formation the Commissioner had no right to disregard the Corporation as being a separate taxable entity, as he did, and allocate the income to and expenses of the Corporation to the Partnership unless he had such right, as the Defendant claims he did, under Section 482 of the Internal Revenue Code of 1954.

■ Said Section 482 and its predecessor, Section 45 of the Internal Revenue Code of 1939, granted to the Commissioner the power to allocate income or deductions between businesses controlled by the same interests if he determines that it is necessary to prevent tax evasion or to clearly reflect income. It seeks only to adjust and correct what may have been improperly done in the bookkeeping between such businesses. The plain language of the statute grants no authority to the Commissioner to disregard completely the corporate entity by combining the net income of a corporation with that of a partnership, an individual or another corporation. Commissioner of Internal Revenue v. Chelsea Products, Inc., (3 Cir.) 197 F.2d 620 and Ross v. Commissioner of Internal Revenue, (5 Cir.) 129 F.2d 310, 313. In the instant case we do not have a situation where the Commissioner has attempted to adjust or correct what may have been improperly done in bookkeeping between two businesses controlled by the same interests, but we have a situation where the Commissioner has completely disregarded as a taxable entity a corporation and has allocated the income and expenses of said corporation to a partnership owned by the same parties owning the stock in the corporation. There is nothing in the evidence that indicates that the books of the Partnership and the books of the Corporation, or either of them, were not properly kept so as to truly reflect the transactions between the two entities, the income to each of the entities and the expenses incurred by each of the entities. The evidence conclusively shows that the books of each entity were properly kept so as to truly reflect the dealings between the two entities and the income and expenses of the entities, respectively. I find and conclude that the Commissioner, particularly in view of the findings hereinabove made as to the purpose for which the Corporation was formed and the business activities of the Corporation since its formation, did not have the authority under Section 482 of the Internal Revenue Code of 1954 to disregard the Corporation as a taxable entity and allocate the income and expenses of the Corporation to the Partnership. Simon J. Murphy Co. v. Commissioner of Internal Revenue (6 Cir.) 231 F.2d 639;

Commissioner of Internal Revenue v. Chelsea Products, Inc., supra; Ross v. Commissioner of Internal Revenue, supra; Cedar Valley Distillery, Inc. v. Commissioner of Internal Revenue, 16 T.C. 870; Seminole Flavor Co. v. Commissioner of Internal Revenue, 4 T.C. 1215; and Tillotson v. McCrory (Dist. of Neb.) 202 F.Supp. 925. If it should be determined that the Commissioner had the authority under said Section 482 to disregard a corporation as a taxable entity in a proper case and allocate the income and expenses of such corporation to another business owned or controlled by the same persons owning or controlling the corporation, I find and conclude that the Commissioner in disregarding the Corporation as a taxable entity and allocating the income and expenses of the Corporation to the Partnership acted arbitrarily and abused his discretion, if any, to so act.

■ We now pass to a consideration of Defendant's alternative contention to the effect that if it should be determined that the Commissioner was not authorized under Section 482 of the Internal Revenue Code of 1954 to allocate all of the income and expenses to the Partnership, the Plaintiffs should be denied their refunds sought because the rental deductions taken by the Partnership for rents paid for equipment rented from the Corporation were not deductible under the provisions of Section 162(a) (3) of the Internal Revenue Code of 1954. This was not the reason the Commissioner made the deficiency assessments in question. In its original answer to the Plaintiffs' complaint the Defendant admitted that the deficiency assessments were made because the Commissioner ignored the corporate entity of the Corporation and treated the Corporation's income and expenses as belonging to the Partnership. The first time the Defendant made the contention now under consideration was when its attorney appeared at the pretrial hearing on April 30, 1962, and presented for filing an amendment to the Defendant's answer setting up such contention. The Court has considered said contention and considers it to be without merit. As above indicated, the Corporation was formed and operated for substantial business purposes. The amount of rent paid by the Partnership to the Corporation for equipment rented was reasonable. In fact, the amount of rent paid was a little less than the rent on like equipment provided for in the manual published by the Associated Equipment Dealers used by the Vardemans in establishing rental rates the Corporation was to charge the Partnership. There is not the slightest indication that the rental rates paid by the Partnership to the Corporation were in excess of what the Partnership would have been required to pay had the Partnership dealt at arms length with a stranger with like equipment for rent.

In light of the findings and conclusions hereinabove made, the Plaintiffs are entitled to recover the additional taxes and interest they paid that are attributable to the erroneous action of the Commissioner in allocating the income and expenses of the Corporation for the years in question to the Partnership, with interest thereon as required by law, and judgment to that effect will be entered.

The parties having stipulated that in the event judgment is to be entered for the Plaintiffs, the amount of such judgment will be computed by the attorneys for the parties, the parties will be given thirty days from the date of this Memorandum Decision within which to prepare and file as a part of the record in this cause a stipulation as to the amount the Plaintiffs, respectively, are entitled to recover in light of the findings and conclusions hereinabove made. Upon such a stipulation being filed, the attorney for the Plaintiffs should prepare and present an appropriate form of judgment after same has been presented to the attorneys for the Defendant for approval as to form. In the event the parties are unable to reach an agreement as to the amount of the recovery the Plaintiffs are entitled to make within the thirty-day period, the Court, upon being so advised by the parties, or either of them, will order a hear-

 

ing for the purpose of determining the amount of the recovery.

As authorized by Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. this Memorandum Decision, together with the stipulation, if any, made by the parties and filed herein as to the amount of recovery Plaintiffs are entitled to under the findings and conclusions herein made, or in the absence of such a stipulation, the findings made by the Court, after hearing, as to the amount Plaintiffs are entitled to recover, will constitute the Findings of Fact and Conclusions of Law in this cause.